*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0312p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CLIFFORD CUMMINGS, JR.,

　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

CITY OF AKRON; RODNEY SHERMAN; and HOWARD VAUGHN, JR.,

　　　　　　　*Defendants-Appellees.*

No. 03-3259

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00410—James S. Gallas, Magistrate Judge.

Submitted: September 16, 2004

Decided and Filed: July 22, 2005

Before: SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge.[*]

---

## COUNSEL

**ON BRIEF:** Gary H. Levine, Cleveland, Ohio, for Appellant. John C. Reece, Patricia A. Rubright, CITY OF AKRON, DEPARTMENT OF LAW, Akron, Ohio, for Appellees.

　　CLAY, J., delivered the opinion of the court, in which NIXON, D. J., joined. SUHRHEINRICH, J. (pp. 10-14), delivered a separate dissenting opinion.

---

## OPINION

---

　　CLAY, Circuit Judge. Plaintiff Clifford Cummings, Jr. appeals from the district court's grant of summary judgment to Defendants City of Akron, Rodney Sherman, and Howard Vaughn, Jr., in this civil rights action brought pursuant to 42 U.S.C. § 1983, alleging violations of Cummings' Fourth Amendment rights to be free from unreasonable seizure and excessive force. For the reasons that follow, we **AFFIRM** the grant of summary judgment to the City of Akron, as well as the dismissal of Cummings' excessive force claim against all Defendants. However, we **REVERSE** the grant of summary judgment to Sherman and Vaughn on Cummings' claims of unreasonable

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

seizure and illegal entry under the Fourth Amendment, and **REMAND** for further proceedings consistent with this opinion.

## I.     BACKGROUND

### A.     Underlying Facts and State Court Proceedings

The following material facts are not in dispute. On March 20, 2001, Defendants Sherman and Vaughn, both Akron police officers, were called to investigate a domestic disturbance call at 1115 Peerless Avenue. The alleged victim informed the officers that the alleged perpetrator, her boyfriend, Carl Bromback, was at 1125 Peerless Avenue, a neighboring house. Sherman and Vaughn went to 1125, which was the home of Plaintiff Cummings, to investigate. Sherman opened the outside screen door, and knocked on the inside entry door. Cummings came to a window from inside the home, and asked the officers what they wanted; Sherman requested that Cummings come to the front door. Cummings came to the front door and partially opened it, and spoke briefly with the officers. During their conversation, Sherman placed one of his feet inside Cummings' doorway, while Vaughn stood directly behind him. Sherman asked Cummings whether Bromback was inside the residence, to which Cummings responded that he was not. Cummings also denied Sherman's request to come inside the house.

While the officers were speaking with Cummings, Sherman detected the odor of marijuana emanating from inside Cummings' house. After inquiring about Bromback, Sherman asked Cummings "what about the weed?," and Cummings immediately attempted to close his front door. Sherman's foot, however, was still inside the doorway, and Cummings was unable to shut the door. At that point, Sherman and Vaughn both pushed the door open, and entered Cummings' home.

After Sherman and Vaughn gained entry into Cummings' house, a struggle ensued. The officers attempted to arrest Cummings, but he resisted, running out onto his front porch. During the struggle, Sherman and Vaughn struck Cummings with their fists and batons, and sprayed him with pepper spray. A third officer arrived on the scene, and used a Taser gun on Cummings. Cummings was finally subdued, handcuffed, and taken into police custody. After securing Cummings, the officers re-entered his home and seized marijuana and firearms.

Cummings was charged in the Summit County Court of Common Pleas with two counts of assaulting a police officer, both felonies, as well as resisting arrest, illegal cultivation of marijuana, possession of marijuana, and obstructing official business. Cummings pleaded not guilty to all charges, and filed a motion to suppress evidence. The trial court granted Cummings' motion to suppress, and the Ohio Court of Appeals affirmed. *See State v. Cummings*, No. 20609, 2002 WL 57979 (Ohio Ct. App. Jan. 16, 2002). Before the Ohio Court of Appeals, the State argued that Sherman and Vaughn were justified in entering Cummings' home either because he consented, or because there were exigent circumstances due to the officers' hot pursuit of a fleeing felon. *Id.* at *3-6. The State's hot pursuit theory rested on the argument that at the point when Cummings shut the door on Sherman's foot, he committed a felony assault, and the officers were justified in entering Cummings' house to arrest him. *Id.* at *5. The state did not contend at any point in the proceedings "that any exigent circumstances except 'hot pursuit' justified the officers' warrantless entry of Cummings' home." *Id.* at *4, n.2. The Ohio Court of Appeals rejected both the State's consent argument and its exigent circumstances due to hot pursuit theory, concluding that the officers' entry into Cummings' home was unlawful, and therefore any evidence obtained as a result of that entry was properly suppressed. *Id.* at *6.

On remand back to the trial court after the Ohio Court of Appeals' rejection of the State's suppression arguments, Cummings pleaded no contest to a reduced charge of misdemeanor assault

on Officer Vaughn, and all other charges against him were dropped.[1] He was sentenced to thirty days in jail on the assault charge, with credit for time served.

### B.     The Instant Lawsuit and Claims Presented on Appeal

Before the trial court accepted his plea and entered judgment on remand, Cummings filed the instant lawsuit in federal district court. The parties consented to have the suit heard by a magistrate judge, and following discovery, the magistrate granted Defendants' motion for summary judgment. Specifically, the magistrate judge concluded that *Heck v. Humphrey*, 512 U.S. 477 (1994), barred all of Cummings' federal constitutional claims, and further, that Defendants were entitled to qualified immunity on those claims.[2]

On appeal, Cummings argues that the magistrate judge erred in rejecting his federal claims. The pleadings below, the magistrate judge's decision, and the parties' appellate briefs are less than clear in their treatment of the issues presented for review. Cummings' complaint contains a single federal constitutional claim, labeled "Count III - Deprivation of Civil Rights." The substance of this claim, as it appears in the complaint, is that "By seizing, beating, restraining and/or committing the actions hereinbefore described, Defendants deprived Plaintiff of his liberty interests under the Due Process clause of the Fourteenth Amendment to the United States Constitution and in violation of 42 U.S.C. § 1983." However, statements made by both Cummings' counsel and Defendants' counsel during Cummings' deposition demonstrate that both sides understood Cummings' suit to encompass Fourth Amendment claims for "unlawful entry" and "excessive use of force." (Cummings Dep. at 116, J.A. at 109.) When Defendants moved for summary judgment, it is clear from the legal memoranda submitted to the district court that they understood that Cummings was suing for the officers' allegedly illegal seizure of his person, allegedly unlawful entry into his home, and alleged use of excessive force, all violations of the Fourth Amendment. However, the magistrate judge only addressed the seizure of Cummings' person and the officers' use of excessive force, concluding that both claims are barred by *Heck*.[3] The magistrate judge went on to state that:

> The Court realizes that the defendants seek summary judgment on whether or not there was an unlawful warrantless entry into Cummings' home, but this allegation was not raised in the counts recited in the complaint, and this Court sees no need to expand upon issues which were not raised.

On appeal, Defendants cite to the magistrate judge's statement and argue that this Court should not entertain on appeal Cummings' claim for unlawful entry. We disagree. As an initial matter, the magistrate judge's decision not to address the claim is irrelevant to the question of

---

[1] Contrary to the dissent's understanding, it was Sherman, and *not* Vaughn, who placed his foot in Cummings' door. Cummings pleaded no contest to assaulting Vaughn and Vaughn alone; thus the dissent's out-of-context quotation of our later discussion of whether Cummings' act of shutting the door on Sherman's foot could have constituted an assault under Ohio law is entirely irrelevant to the assault he actually pleaded no contest to. *See* note 4, *infra*.

[2] Cummings also had several state law claims, over which the magistrate judge declined to exercise supplemental jurisdiction, and dismissed without prejudice.

[3] Incidentally, Defendants did not raise *Heck* in their motion for summary judgment. We have not explicitly held whether *Heck* constitutes an affirmative defense, although at least one of our sister circuits has found that defendants may waive *Heck* arguments by failing to make them before the district court. *See Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004); *but see Manthey v. Kessler*, 79 Fed. Appx. 153, 153-54 (6th Cir. 2003) (unpublished decision) (affirming without analysis district court's *sua sponte* finding that *Heck* barred the plaintiff's claims); *Gil v. City of New York*, 32 Fed. Appx. 615, 616 (2d Cir. 2002) (unpublished decision) (same). In any event, Plaintiff has not argued on appeal that *Heck* constitutes an affirmative defense; thus it is unnecessary for this Court to make any such finding.

whether this Court may address it on appeal. We apply a "course of the proceedings" test to determine whether defendants in a § 1983 action have received notice of the plaintiff's claims where the complaint is ambiguous. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (*en banc*) (holding that failure to explicitly state in complaint whether a defendant is being sued in his or her individual capacity "is not fatal if the course of the proceedings otherwise indicate that the defendant received sufficient notice"). Here, regardless of the fact that Cummings failed to raise unlawful entry in his complaint, Defendants were clearly on notice of Cummings' unlawful entry claim; in fact, Defendants moved for summary judgment on the unlawful entry claim, which was fully briefed below by both parties. *See, id.* at 774 ("Subsequent filings in a case may rectify deficiencies in the initial pleadings."); *see also Vencor, Inc. v. Standard Life and Accident Ins. Co.*, 317 F.3d 629, 641, n.11 (6th Cir. 2003) (rejecting defendant's claim on appeal that plaintiff waived argument by not putting it in complaint, where plaintiff made the argument in its memorandum in opposition to defendant's motion for summary judgment). Notwithstanding the magistrate judge's statements, because Defendants failed to make any objection whatsoever to Cummings' failure to raise the unlawful entry claim in his complaint, we deem any objection waived for the purposes of this appeal. *See Smoot v. United Transp. Union*, 246 F.3d 633, 648 (6th Cir. 2001) ("Because [defendant] failed to object . . . below, under the waiver rule this Court will not consider [defendant's] claim"); *United States v. Burns*, 441 F.2d 544, 545 (9th Cir. 1971) ("[F]ailure to object to the sufficiency of the complaint in the district court waives the point on appeal.").

Based on the above, we find Cummings to have preserved essentially three separate constitutional claims for appeal, each of which has its genesis in the Fourth Amendment. First, Cummings argues that Sherman's and Vaughn's entry into his home– both Sherman's initial foot-in-the door entry, and both officers' subsequent forced entry–was in violation of the Fourth Amendment, because the officers did not have a warrant or probable cause, and no exigent circumstances supported their entry. Second, Cummings claims that Sherman and Vaughn illegally seized him without probable cause. And third, Cummings asserts that Sherman and Vaughn used excessive force against him.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment *de novo*. *Moorer v. Baptist Memorial Health Care Sys.*, 398 F.3d 469, 486 (6th Cir. 2005). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We "must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party," *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004), but we will uphold a grant of summary judgment "[w]here the record as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    *Heck v. Humphrey*

The magistrate judge granted summary judgment in Defendants' favor based on his finding that "Cummings is clearly confronted with a *Heck v. Humphrey* dilemma." *Heck* bars § 1983 plaintiffs from advancing claims that, if successful, "would necessarily imply the invalidity" of a prior conviction or sentence. *Heck*, 512 U.S. at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original). In the instant case, the magistrate judge concluded that Cummings' success

on any of his federal constitutional claims would necessarily imply the invalidity of his state court misdemeanor assault conviction.

We agree with the magistrate judge that success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined. Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge. Thus, we hold that *Heck* bars Cummings' excessive force claim from moving forward, and we affirm the district court's grant of summary judgment to Defendants' on this claim.

However, we disagree with the magistrate judge's conclusion that *Heck* bars Cummings' unreasonable seizure and unlawful entry claims. Under Ohio law, Cummings was barred from raising the illegality of the entry into his home or the unreasonableness of the officers' initial seizure of his person as defenses to assault. The traditional common law rule allowing individuals to resist illegal arrests has been explicitly disregarded by the Ohio Supreme Court. *See City of Columbus v. Fraley*, 324 N.E.2d 735, 740 (Ohio 1975). In *Fraley*, the court held that "in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* The court later refined this holding in the context of a Fourth Amendment violation:

> A warrantless entry . . . may quite possibly result in the exclusion of pertinent incriminating evidence observed in such entry, and the showing of unreasonable conduct by a law enforcement officer may well provide a privilege to resist the entry by the occupant. Nevertheless, absent bad faith on the part of a law enforcement officer, an occupant . . . cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances.

*State v. Pembaur*, 459 N.E.2d 217, 219 (Ohio 1984).

Contrary to the dissent's claim, *Fraley* and *Pembaur* hold that the invalidity or unlawfulness of a warrantless entry is not a defense to the charge that a criminal defendant assaulted a police officer, and that absent excessive force, an arrestee may not use force against an officer. *Id.* at 219; *Fraley*, 324 N.E.2d at 740. In *Pembaur*, the Ohio Supreme Court made clear that the exclusive remedy for an unlawful entry by police officers is the suppression of any incriminating evidence that is uncovered as a result of the illegal entry. *See Pembaur*, 459 N.E.2d at 219 ("Although defendant may well successfully challenge the use against him of any evidence obtained by the deputies in their search . . . defendant was not privileged to physically impede the deputies."). The dissent's citation to *City of Middleburg Heights v. Theiss*, 501 N.E.2d 1226 (Ohio Ct. App. 1985), is also misplaced. *Theiss* notes in *dicta* that individuals are privileged to refuse entry to police officers; however, the court distinguished between the right to refuse initial entry and a right to assault officers once they have gained entry; the latter is what Cummings pleaded no contest to, and like *Fraley* and *Pembaur*, *Theiss* concludes that unlawful entry is not a defense to assaulting a police officer. 501 N.E.2d at 1229 ("[T]he critical issue to resolve is whether, assuming the entrance was unlawful, the defendants were then privileged to assault police officers *after* they had gained entrance into the home. We think not.") (emphasis in original).

Cummings contested the officers' actions in the course of his criminal prosecution by moving to suppress evidence obtained as a result of the warrantless entry, an argument that, as mentioned, was successful before both the trial court and the court of appeals. Separate and apart from the fact that both the trial and appellate courts found that Sherman and Vaughn violated Cummings' Fourth Amendment right to be free from unreasonable search and seizure, Cummings'

only defense to the assault charge against him would have been to claim that the officers used excessive force. Cummings did not make such an argument, instead pleading no contest to assaulting Vaughn. It is for this reason that *Heck* bars Cummings' Fourth Amendment excessive force claim from moving forward in the instant lawsuit. However, because Cummings had no other Fourth Amendment defense to the assault charge, a successful suit under § 1983 against both Sherman and Vaughn for entering his home without a warrant and probable cause would not "imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Additionally, although Ohio law barred Cummings from asserting the illegality of the seizure of his person in the context of the assault charge, *Heck* is not a bar to Cummings' assertion of the illegal seizure claim in the instant suit for damages. Cummings' assault conviction cannot be disturbed whether he was legally or illegally seized; thus, the relevant question becomes whether or not the seizure of Cummings' person and entry into his home were illegal, and if they were, whether Cummings suffered a compensable injury. *See Braxton v. Scott*, 905 F. Supp. 455, 458 (N.D. Ohio 1995) (quoted in *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 (6th Cir. 1999)) ("[F]ourth amendment claims under § 1983 may be brought without setting aside the conviction only if success would not undermine the conviction and if the plaintiff alleges a compensable injury other than the conviction.")

One other point about *Heck* should be mentioned. The factual situation in this case is distinguishable from the hypothetical situation discussed in footnote 6 of *Heck*, in which the Court foreclosed § 1983 lawsuits based upon Fourth Amendment violations where the plaintiff was previously convicted in state court of resisting arrest. *Heck*, 512 U.S. at 487, n. 6. The Court explains that a subsequent suit for damages would not be cognizable because a *lawful* arrest is an element of the typical offense of resisting arrest, and thus "[i]n order to prevail in this § 1983 action, [the plaintiff] would have to negate an element of the offense of which he has been convicted." *Id.* Conversely, Cummings was convicted of assault, not resisting arrest, and the lawfulness of the arrest is not an element of the crime of his conviction. Indeed, as discussed above, the legality of the arrest is irrelevant to Cummings' crime of conviction. Thus, footnote 6 of *Heck* is inapposite to the present case.

## C.     Municipal Liability

Before addressing the merits of Cummings' claims against Sherman and Vaughn, we note that the district court properly dismissed all claims against the City of Akron. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor-- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, in order to hold a municipality liable, the § 1983 plaintiff must show that he or she was injured as a direct result of the municipality's official policy or custom. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005). In this case, Cummings has not shown a causal link between a policy or custom of the City of Akron and a violation of his constitutional rights. Thus, the district court properly granted summary judgment in the City's favor.

## D.     Qualified Immunity and the Legality of the Officers' Actions

We now turn to the claims against Officers Sherman and Vaughn. Having found that *Heck* is not a bar to some of Cummings' claims, the question turns to whether the officers are protected by qualified immunity. Qualified immunity is an affirmative defense that generally shields government officials from suit under § 1983 for their discretionary actions. *Thomas v. Cohen*, 304 F.3d 563, 568 (6th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-40 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat Sherman's and Vaughn's assertion of qualified immunity, Cummings must demonstrate that (1) Sherman and Vaughn deprived him of a constitutionally protected right, and (2) that the right is "so clearly established that a reasonable officer would understand that his or her actions would violate that right." *Id.* at 569 (citing *Harlow*,

457 U.S. at 818). Thus, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

### 1.    Deprivation of a constitutionally protected right

"It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)); *cf. Welsh v. Wisconsin*, 466 U.S. 740, 748 ("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (quotation and citation omitted). Without a warrant or consent, searches or seizures inside the home are upheld only "under extraordinary circumstances," because "[t]he freedom from armed intrusions of the home outside the judicial process, without prior approval by a judge or magistrate . . . is one of our most basic civil liberties." *United States v. Chambers*, 395 F.3d 563, 565, 569 (6th Cir. 2005).

Sherman and Vaughn had no warrant to arrest Cummings or to search his residence, and Cummings did not consent to the officers' entry into, or presence in, his home. Cummings manifested his intent to keep the inside of his home private, first by attempting to talk to the officers through the window, and later by only partially opening the front door during his conversation with the officers and refusing their request to enter the house. Cummings also demonstrated that he wished to end his conversation with the officers when he attempted to close the door, but he was prevented from doing so by the presence of Sherman's foot in the doorway. For these reasons, it is clear, as the Ohio Court of Appeals found, that Cummings' "attempt to close the door constituted a termination of the consensual encounter, and communicated his lack of consent to any further intrusion by the officers." *Cummings*, *supra*, 2002 WL 57979 at *4.

Defendants contend, as did the State in response to Cummings' motion to suppress, that when Cummings shut the door on Sherman's foot, the officers had probable cause to believe that Cummings had committed the crime of assault, and any entry into his home to seize him was justified by exigent circumstances under the hot pursuit of a fleeing felon exception to the warrant requirement. *See*, *e.g.*, *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003) (recognizing "hot pursuit of a fleeing felon" as an exigency exception to the warrant requirement). We agree with the Ohio Court of Appeals that this argument is without merit. As that court recognized, the key to the hot pursuit exception is "that a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976). Typically, hot pursuit involves a situation where a suspect commits a crime, flees and thereby exposes himself to the public, attempts to evade capture by entering a dwelling, and the emergency nature of the situation necessitates immediate police action to apprehend the suspect. *See*, *e.g.*, *Warden v. Hayden*, 387 U.S. 294, 298-9 (1967); *United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002); *see also United States v. Saari*, 272 F.3d 804, 812 (6th Cir. 2001) (describing hot pursuit as "immediate or continuous pursuit of the Defendant from the scene of a crime.") In *Santana*, the Supreme Court upheld the effectuation of a warrantless arrest of the defendant inside her home, because the police initiated the arrest while she was standing in the open doorway of her house, and she retreated inside before the police could apprehend her. Integral to the Court's analysis was a finding that Santana "was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house," and thus she had no legitimate expectation of privacy at the time the police initiated the arrest. *Santana*, 427 U.S. at 42.

In contrast to *Warden* and its progeny, Cummings did not commit a crime in a public place and attempt to flee into his house; in contrast to *Santana*, Cummings never fully exposed himself to the public view, given that he only opened the door very slightly, and only at the request of the

police. Additionally, unlike the situation in *Santana*, Sherman and Vaughn did not attempt to arrest Cummings until after he tried to shut the door, at which point he clearly indicated that he did not wish to be exposed to the public. Furthermore, it is highly questionable whether Cummings' act of closing the door on Sherman's foot actually constituted an assault; if there is no underlying felony, the 'hot pursuit of a fleeing felon' exception to the warrant requirement is untenable. Ohio's assault statute states that "[n]o person shall *knowingly* cause or attempt to cause physical harm to another," and "[n]o person shall *recklessly* cause *serious* physical harm to another." Ohio Rev. Code § 2903.13 (A), (B) (emphasis added). There is no evidence on the record before us to suggest that Cummings knew Sherman's foot was in the doorway when he attempted to shut door, and the Ohio Court of Appeals found it "undisputed that, whatever amount of force was applied, Officer Sherman's foot sustained no injuries as a result of Cummings' attempt to close the door." *Cummings*, 2002 WL 57979 at *1, n.1. Given Cummings' lack of exposure to the public view, as well as the very questionable nature of the felony that Defendants allege he committed, the hot pursuit of a fleeing felon exception to the warrant requirement is inapplicable.[4]

Because Sherman's and Vaughn's seizure of Cummings' person and entry into his home were unsupported by a warrant, consent or exigent circumstances based upon the hot pursuit of a fleeing felon, the officers deprived Cummings of his constitutionally protected right to refuse entry into his home, and to be free from an unreasonable seizure of his person.

## 2.        Clearly established nature of the constitutional violation

Having found a violation of Cummings' Fourth Amendment rights, we now turn to whether those rights were clearly established at the time of Cummings' arrest. In order to determine whether a constitutional right is clearly established, we "look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994). In order for a constitutional right to be clearly established, there need not be a case with the exact same fact pattern, or even "fundamentally similar" or "materially similar" facts; rather, the question is whether the defendants had "fair warning" that their actions were unconstitutional. *Hope*, *supra*, 536 U.S. at 741; *cf. United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful.") (quotation and citation omitted).

In the instant case, one not need go any further than Supreme Court precedent to see that Cummings' constitutional rights were clearly established. The bedrock Fourth Amendment principles announced in *Payton* and *Welsh* demonstrate that the officers' forced warrantless entry into Cummings' home was presumptively unreasonable, and the Court's exigency decisions in *Warden* and *Santana* clearly show that Sherman and Vaughn had no objectively reasonable basis for believing that their warrantless entry into Cummings' home was supported by the exigency of hot pursuit of a fleeing felon. Therefore, we find that Sherman and Vaughn are not shielded by qualified immunity, and Cummings' Fourth Amendment claims for the warrantless entry into his

---

[4]Defendants have not claimed any basis for exigent circumstances other than hot pursuit of a fleeing felon, such as imminent destruction of evidence. Because qualified immunity must be asserted by the defendant official, it was incumbent upon Defendants to raise a plausible legal basis for the asserted legality of their seizure of Cummings' home and person.

In addition, as we stated in note 1, *supra*, our discussion of the officers' hot pursuit theory, and their claim that Cummings assaulted Sherman by shutting the door on his foot, should not be confused with the fact that Cummings pleaded no contest to assaulting Vaughn alone. Therefore, the dissent's quotation of the above paragraph in the context of discussing *Heck* is misplaced.

home and seizure of his person may go forward. On remand, the trier of fact will need to determine what, if any, injury Cummings suffered as a result of Defendants' actions, and what, if any, monetary damages Cummings is entitled to as compensation.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment in favor of the City of Akron, and the grant of summary judgment in Defendants' favor on Cummings' excessive force claim. However, we **REVERSE** the grant of summary judgment in favor of Defendants Sherman and Vaughn on Cummings' unlawful entry and illegal seizure claims, and **REMAND** the case to the district court for further proceedings consistent with this opinion.

---

**DISSENT**

---

SUHRHEINRICH, Circuit Judge, dissenting.  I  dissent from the majority's decision to reverse because I believe Cummings' federal constitutional claims collaterally attack the legality of his state court assault conviction.  Because Cummings' state conviction has not been overturned on appeal, expunged by the governor, declared invalid, or questioned by a habeas grant, all of his federal claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

The majority acknowledges the effect of Cummings' plea agreement, and *Heck*, on at least some of Cummings' subsequent federal constitutional claims by stating that:

> success on Cummings' excessive force claim would necessarily imply the invalidity of his state assault conviction.  The struggle between Cummings and the officers gave rise to both Cummings' assault conviction and the excessive force claim, and the two are inextricably intertwined.  Additionally, Cummings could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge.

*Maj. Op.* at 5.

However, the majority holds that Cummings can maintain his § 1983 unlawful entry and illegal seizure claims because, under Ohio law, Cummings cannot claim illegal entry or illegal seizure as defenses to assault and, therefore, a successful conviction as to these claims would not "imply the invalidity of [Cummings'] conviction or sentence."  Even if Cummings was precluded from raising the privilege of illegal entry and seizure as *a matter of law* (a point I dispute, as discussed below),  he could have raised these issues as *a matter of fact* to argue that the State could not prove he had the requisite mens rea for assault.

The indictment reads in relevant part:

The Jurors of the Grand Jury of the State of Ohio . . .

**COUNT ONE**

DO FIND AND PRESENT That **CLIFFORD CUMMINGS, JR.** On or about the 9th day of March, 2001, in the County of Summit and State of Ohio, aforesaid, did commit the crime of **ASSAULT** in that he did knowingly cause or attempt to cause physical harm to Office Howard Vaughn, a peace officer, while in the performance of official duties, in violation of Section 2903.13(A) of the Ohio Revised Code.  A FELONY OF THE FOURTH DEGREE, contrary to the form of the state in such case made and provided and against the peace and dignity of the State of Ohio.

. . .

No. 2001-03-0585, Court of Common Pleas, County of Summit, Ohio (March, 2001).

Had Cummings pleaded "not guilty" instead of  "no contest," to this charge, the State would have been required to prove beyond a reasonable doubt that Cummings "*knowingly* cause[d], or attempt[ed] to cause physical harm to another." Ohio Rev. Code § 2903.13 (emphasis added).  That is, the State would have been required to prove that Cummings was aware that his conduct would probably cause a certain result or would probably be of a certain nature, regardless of his purpose

in so acting. *See State v. Brown*, 630 N.E. 2d 397 (Ohio App. 3d 1993) (defining "knowingly" for purposes of Ohio Rev. Code § 2903.13).  Yet, as the majority points out:

> [I]t is highly questionable whether Cummings' act of closing the door on Sherman's foot actually constituted an assault; if there is no underlying felony, the 'hot pursuit of a fleeing felon' exception to the warrant requirement is untenable.  Ohio's assault statute states that "[n]o person shall *knowingly* cause or attempt to cause physical harm to another," and "[n]o person shall *recklessly* cause *serious*  physical harm to another."  OHIO REV. CODE § 2903.12(A), (B) (emphasis added).  There is no evidence on the record before us to suggest that Cummings knew Sherman's foot was in the doorway when Cummings attempted to shut [the] door, and the Ohio Court of Appeals found it "undisputed that, whatever amount of force was applied, Officer Sherman's foot sustained no injuries as a result of Cummings' attempt to close the door." *Cummings*, 2002 WL 57979, at *1, n.1.  Given Cummings' lack of exposure to public view, as well as the very questionable nature of the felony Defendants allege he committed, the hot pursuit exception to the warrant requirement is inapplicable.
>
> Because Sherman's and Vaughn's seizure of Cummings' person and entry into his home were unsupported by a warrant, consent or exigent circumstances based upon the hot pursuit of a fleeing felon, the officers deprived Cummings of his constitutionally protected right to refuse entry into his home, and to be free from an unreasonable seizure of his person.

*Maj. Op.*  at 8 (footnote omitted).

As the foregoing passage makes clear, Cummings could have argued that he did not have the requisite criminal intent to commit the crime of assault because all he was trying to do was exercise his well-established constitutional right to refuse the officers' request for entry and close the door to his home since the officers had neither a search warrant nor arrest warrant, and did not otherwise indicate that they were operating under exigent circumstances.  And, as the Ohio Court of Appeals found, Sherman's and Vaughn's actions were indeed unlawful.  Thus, on the facts of this case, the legality or illegality of the officers' presence was integrally connected to Cummings' response to the officers' presence, and therefore his state of mind at the time of the alleged crime.  In short, contrary to the conclusion of the majority, Cummings had a perfect opportunity to raise his Fourth Amendment claim in the state court criminal proceedings–to rebut the State's contention that he had the requisite mens rea to commit the crime of criminal assault.

Instead, on March 19, 2002, Cummings pled "no contest" to the charge of assault against Officer Vaughn as contained in Count I of the indictment.[1]  The order of the Court of Common Pleas reads in part:

> Defendant retracts his plea of NOT GUILTY heretofore entered, and for plea to said Indictment, says he pleads NO CONTEST to the charge of ASSAULT, as contained in the amended Count I of the Indictment, Ohio Revised Code section 2919.13(A),

---

[1] It should be noted that Cummings originally pleaded not guilty to all the charges against him, and filed a motion to suppress. *See State v. Cummings*, No. 20609, 2002WL 57979, at *2 (Ohio Ct. App. Jan. 16, 2002).  The trial court granted the motion and the State appealed.  On January 16, 2002, the Ohio Court of Appeals overruled the State's appeal and affirmed the trial court's ruling.  Then, on March 22, 2002, two months after the court of appeals' decision, Cummings apparently changed course and pleaded "no contest" in return for the State dropping all but the assault charges against him, and reducing the felony assault charge to a misdemeanor.  However, in the meantime, on March 5, 2002, Cummings filed this federal cause of action, asserting his Fourth Amendment claims.

a misdemeanor of the first (1ˢᵗ) degree, which offense occurred on or about March 9, 2001, which plea *voluntarily made and with a full understanding of the consequences*, is accepted by the Court. And based upon the facts as found by this Court, the Court finds that the Defendant is GUILTY as stated above.

No. CR 01 03 0585, Court of Common Pleas, County of Summit, Ohio (March 19, 2002) (emphasis added). The order also indicates that Cummings was represented by counsel and was "fully advised of his Constitutional rights and his rights as required under Rule 11 of the Ohio Rules of Criminal Procedure." *Id.* Based on Cummings' "no contest" plea, the court dismissed the remaining charges against him.

As is clear from the state court order, Cummings was advised of his constitutional rights and was made aware of the fact that a "no contest" plea amounted to the court finding him guilty of criminal assault. Instead of pleading no contest, Cummings could have raised any Fourth Amendment arguments which might have affected a determination of whether he was guilty of assault. It is for this reason that *Heck* bars any claim in federal court based on the unlawful entry, because a favorable ruling for Cummings on his federal constitutional claims necessarily implies that he did not have the criminal intent to commit the crime of assault in that he did not knowingly intend to cause physical harm to either officer but merely wished to refuse them entry into his home because they had no right to come inside. However, by pleading no contest to those charges, Cummings necessarily admitted that he was guilty of, and therefore had the criminal intent to commit, the crime of assault.

The majority also overstates the holdings of *City of Columbus v. Fraley,* 324 N.E.2d 735 (Ohio 1975), and *State v. Pembaur*, 459 N.E. 217 (Ohio 1984), as an absolute bar to these defenses.[2] In *Fraley*, the defendant was convicted of violating an ordinance prohibiting the use of obscene language on public streets and of also violating an ordinance prohibiting the use of violence against a police officer. The Ohio Supreme Court rejected the defendant's argument that she was privileged to use force in resisting arrest if her arrest for the alleged use of obscene language was illegal. *Id.* at 739. The Court held that "in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Id.* at 740.

In *Pembaur*, the defendant refused to allow two Cincinnati police officers to serve two bench warrants upon two of his employees at his medical clinic, which was open to the public. The defendant was charged with obstructing official business under Ohio Rev. Code § 2921.31(A). *Id.* at 217-18. Stating that "[t]he key issue presented in this case is whether a person may obstruct a law enforcement officer in the discharge of that officer's duty, when the person believes that the officer's conduct is unlawful," *id.* at 218, the *Pembaur* Court looked to *Fraley*:

The crux of this case is the applicability of *Columbus v. Fraley* . . . . There we held in the third paragraph of the syllabus that:

"In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to

---

[2] As the Ohio Court of Appeals has observed, "[t]he extent of the privilege to resist unlawful entry into the home has yet to be dealt with in Ohio." *State v. Howard*, 600 N.E. 2d 809, 816 (Ohio Ct. App. 1991) (quoting *Middleburg Heights v. Theiss*, 501 N.E. 2d 1226 (Ohio Ct. App. 1985); *see also Howard* at 817 (noting a limited right to refuse entry and stating that an occupant can refuse to consent to an entry and search by, for example, locking or closing the door or physically placing one's self in the officer's way).

believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances."

In altering the common-law rule granting a person the right to resist an unlawful arrest, the *Fraley* court deemed it preferable, considering the crunch of modern society, to resolve the questions concerning the legality of police conduct in the courts through peaceful means rather than on the street in potentially violent confrontation. *Fraley* is determinative in the present case. Although defendant may well successfully challenge the use against him of any evidence obtained by the deputies in their search for defendant's employees, defendant was not privileged to physically impede the deputies in their attempt to locate the subject of the capiases.

This, of course, is not to hold that law enforcement officials can freely execute capiases and arrest warrants on third-party premises. A warrantless entry, as in this case, may quite possibly result in the exclusion of pertinent incriminating evidence observed in such entry, *and the showing of unreasonable conduct by a law enforcement officer may well provide a privilege to resist the [warrantless] entry by the occupant.* Nevertheless, *absent bad faith* on the part of a law enforcement officer, an occupant *of business premises* cannot obstruct the officer in the discharge of his duty whether or not the officer's actions are lawful under the circumstances. The facts in this case do not show bad faith on the part of the deputies, or any other circumstances which would provide a privilege on the part of defendant to obstruct the deputies in the discharge of their duties.

*Pembaur*, 459 N.E. at 219 (emphasis added).

Contrary to the majority's representations, *Fraley* and *Pembaur* do not set forth a per se rule barring the defense of illegality to a police officer's entry. Furthermore, both cases dealt with public places, not private homes. As the United States Supreme Court observed in *Steagald v. United States*, 451 U.S. 201 (1981):

Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York*, 445 U.S. 573 . . . (1980); *Johnson v. United States*, 333 U.S. 10, 13-15 . . . (1948). Thus, as we recently observed: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, *supra*, 445 U.S. at 590.

*Steagald*, 451 U.S. at 211-12.

I submit that, under *Fraley* and *Pembaur*, Cummings could have asserted the unreasonableness of that Sherman's and Vaughn's conduct as a defense to the state assault charge. After all, the majority observes "[t]he bedrock Fourth amendment principles announced in *Payton* and *Welsh* demonstrates that the officers' forced warrantless entry into Cummings' home was *presumptively unreasonable,* and the Court's exigency decisions in *Warden* and *Santana* clearly show that Sherman and Vaughn had no objectively reasonable basis for believing that their warrantless entry into Cummings' home was supported by the exigency of hot pursuit of a fleeing felon." *Maj. Op.* at 8 (emphasis added).

In short, by pleading no contest to the assault charge, Cummings conceded that he acted unlawfully, without justification. A conclusion by a federal court that the officers' conduct was illegal necessarily undermines that judgment of conviction. Furthermore, because Cummings could

have raised the officers' illegal search and seizure as a defense –arguably as a matter of law anc certainly as a matter of fact–the federal court action is barred by *Heck*.

Unfortunately, the Court today has allowed Cummings to make an end run around *Heck,* and ultimately, the underlying state criminal proceeding *Heck* seeks to protect.

For these reasons, **I DISSENT**.