**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0736n.06

**No. 08-6406**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **ROY L. DENTON**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee.* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **STEVE RIEVLEY**, in his individual capacity | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant,* | ) | |
| | ) | |

**FILED**
**Nov 13, 2009**
LEONARD GREEN, Clerk

**BEFORE:** **RYAN, COLE, and CLAY**, Circuit Judges.

**COLE, Circuit Judge.** In this lawsuit alleging violations of 42 U.S.C. § 1983, Appellant Steve Rievley, a Dayton City police officer, appeals the denial of his motion for summary judgment on claims made by Appellee Roy Denton. Rievley claims that he should have been granted summary judgment on Denton's "warrantless arrest" claim because he is entitled to qualified immunity. We **AFFIRM.**

**I. BACKGROUND**

**A.      Factual background**

Rievley has been an officer with the Dayton City Police Department since 2005. At 1:39 a.m. on September 9, 2006, while working an overnight shift, Rievley received and responded to a call from dispatch regarding domestic violence.

Brandon Denton, the alleged victim, had gone to the local jail to make a complaint about his father (Roy Denton) and brother (Dustin Denton). Brandon claimed that after returning home from a late shift at work, Roy and Dustin Denton began hitting him. Roy Denton, however, denies any attack took place. At the jail, Rievley observed red marks on Brandon's neck consistent with strangulation and abrasions on his arms and forehead. Rievley also confirmed with Brandon's co-worker that Brandon did not have any injuries or abrasions when he was dropped him off at home. Rievley drove to the Denton home accompanied by other police officers; they did not have a warrant. The parties dispute precisely what happened next.

According to Rievley, he walked to the door of the house and questioned Roy. Rievley's affidavit is silent as to whether or not he knocked on Denton's door. Since Rievley smelled alcohol on Roy and noticed broken eyeglasses lying on the porch, he decided to arrest Roy and Dustin Denton for domestic assault. Rievley testified that he informed Roy that he was under arrest, and, after a short discussion, Roy turned away from Rievley toward his house. As Roy turned away, Rievley grabbed his right arm and then handcuffed both arms. According to Rievley, "Denton was standing at the very least on the threshold of his front door on the front porch of his home with the door open when he was arrested." (Rievley Br. 15.) Rievley and another officer then entered the Denton house in search of Dustin, whom they located after a short search.

According to Roy, however, he was standing three feet inside his home and never crossed the threshold of his front door during his encounter with Rievley. In fact, Roy says he was dressed for bed and wearing nothing but silk sleeping shorts. Roy avers in his amended complaint that he opened the front door thinking his wife was knocking yet notes in his memorandum in support of

his motion for partial summary judgment that "he saw lights approaching his front door and thus opened his door to investigate." (Dist. Ct. Doc. No. 21 p. 1.) However, he consistently maintains that Rievley forced his way across the threshold and arrested him inside the home.

**B.      Procedural background**

Roy and Dustin Denton filed a pro se suit against Rievley, alleging violations of 42 U.S.C. § 1983 and various state tort claims. After Dustin was removed as a co-plaintiff, Roy filed a motion for partial summary judgment, which the district court denied. The court also denied Denton's motion for reconsideration, which he does not appeal. Rievley then filed a motion for summary judgment, which the district court granted in part and denied in part. Ruling on Rievley's motion for summary judgment, the court found that Rievley had had probable cause to arrest Denton, but that he was not entitled to summary judgment on Denton's warrantless arrest claim because, viewing the facts in the light most favorable to Denton, Rievley had arrested Denton inside his home without a warrant in violation of *Payton v. New York*, 445 U.S. 573 (1980). The court found that Rievley was not entitled to qualified immunity as a matter of law because a reasonable officer would have known of clearly established law prohibiting warrantless in-home arrests. It found that Denton "maintained a claim" for unlawful entry and search of his home, but granted Rievley summary judgment on Denton's excessive force and assault claims.

Rievley appealed the denial of his motion for summary judgment on the warrantless arrest and qualified immunity claims and the determination that Denton "maintained a claim" for the unlawful entry and search of his home. Denton moved to dismiss the appeal for lack of jurisdiction. We took Denton's motion with the case.

## II. ANALYSIS

### A.     Fourth Amendment violation

Rievely argues that the district court erred in denying him summary judgment on the claim that he arrested Denton inside his home without a warrant in violation of the Fourth Amendment. He claims that, even construing the facts in the light most favorable to Denton, the arrest occurred outside of Denton's home.  We lack jurisdiction to review the issue because the district court's decision to proceed to trial is not a "final judgment" but rather a ruling on "evidence sufficiency." *Johnson v. Jones*, 515 U.S. 304, 313 (1995) (holding that a portion of a district court's summary judgment order that determines "which facts a party may, or may not, be able to prove at trial" is not appealable).

### B.     Qualified immunity

Rievley seeks to avoid a trial by arguing that even if this Court determines that he violated Denton's constitutional rights, he is entitled to qualified immunity. We review Rievley's qualified immunity challenge de novo.  *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (citing *Flagner v. Wilkinson*, 241 F.3d 475, 480 (6th Cir. 2001)).

Before reaching the merits of Rievley's appeal, we must determine whether we have jurisdiction.  It has been settled for some time that we may review interlocutory appeals challenging the denial of qualified immunity.  *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Behrens v. Pelletier*, 516 U.S. 299, 301 (1996) (same).  Yet our jurisdiction extends only to "pure legal issue[s]" and does not reach factual disputes regarding the underlying record. *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999) (quoting *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).  For

our jurisdiction to lie, "a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002).

While some of Rievley's arguments do dispute the facts of his encounter with Denton, he also raises arguments based on purely legal issues, such as whether the alleged constitutional violation was "so clearly established at the time of the events in question that a reasonable officer would have known what standard governed his conduct and that the conduct was wrong under that standard." *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). It is over these purely legal issues, discrete from the factual disputes, that our jurisdiction extends. *See, e.g.*, *id.* at 298 ("Where . . . the legal issues are discrete from the factual disputes, we may exercise our jurisdiction to resolve the legal issues only.") (citing *Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001)).

Qualified immunity is available, and government officials are shielded from civil liability for discretionary functions, "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant[']s] position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

This Court has recently articulated the appropriate test for analyzing whether a defendant is entitled to qualified immunity as:

> [A] three-step inquiry[:] First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Merriweather v. Zamora*, 569 F.3d 307, 315 (6th Cir. 2009) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)); *cf. Cummings v. Akron*, 418 F.3d 676, 685 (6th Cir. 2005).

Although the sequence of this inquiry is no longer mandatory, we discuss the three steps in the order outlined above. *Pearson*, 129 S.Ct. at 818.

### a.

First, we ask whether, under the facts alleged by the plaintiff, a constitutional violation occurred. We find that Denton has sufficiently alleged and supported a violation of constitutional rights.

"'It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Cummings*, 418 F.3d at 685 (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971))). While a warrantless felony or misdemeanor arrest[1] in a public place does not violate the Fourth Amendment, *see Atwater v. Lago Vista*, 532 U.S. 318 (2001), *United States v. Watson*, 423 U.S. 411 (1976), a "firm line" has been drawn at the entrance to the home. *United States v. Thomas*, 430 F.3d 274, 276 (6th Cir. 2005) (quoting *Payton*, 445 U.S. at 590). *Atwater* reaffirms the "firm

---

[1] Domestic assault is a misdemeanor in Tennessee. *See* Tenn. Code Ann. §§ 39-13-11(c)(1), 39-13-101(b)(1).

line" that divides the public from the home in the misdemeanor context, noting that Atwater's warrantless arrest was justified, in part, because it was not made in a manner "unusually harmful to [her] privacy . . . interests," such as inside her home without a warrant. *Atwater*, 532 U.S. at 354 (quoting *Whren v. United States*, 517 U.S. 806, 818 (1996)). "Under the Fourth Amendment, absent exigent circumstances, police officers may not make a warrantless and nonconsensual entry into a private dwelling to make a routine felony arrest." *Ingram v. Columbus*, 185 F.3d 579, 587 (6th Cir. 1999) (citing *Payton*, 445 U.S. at 576, 590).

A definition of "the home" is therefore important in protecting the "firm line" that separates it from the public. In *United States v. Santana*, the Supreme Court held that the doorway of a house is a public place. 427 U.S. 38, 42 (1976). The Court emphasized the interplay between an individual's expectation of privacy and the demarcation of his home: "Integral to the Court's analysis was a finding that Santana 'was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house,' and thus had no legitimate expectation of privacy at the time the police initiated the arrest." *Cummings*, 418 F.3d at 686 (quoting *Santana*, 427 U.S. at 42).

Thus, if an individual does not expose himself to public view, he maintains an expectation of privacy and is therefore in his home and not a public place. *Cummings*, 418 F.3d at 686; *see also id.* at 685 (noting that plaintiff's attempt to talk to officers through a window, his partial opening of his front door, and his refusal to grant the officers' request to enter his home manifested his intent to maintain his expectation of privacy in his home); *United States v. Saari*, 272 F.3d 804 (6th Cir. 2001) (finding that defendant did not voluntarily expose himself to the public when he opened his

door following the forceful knocks of police, who had positioned themselves in front of the sole exit to his apartment with their guns drawn). *But see United States v. Gori*, 230 F.3d 44 (2d Cir. 2000), *cited with approval and distinguished in Saari* (noting that defendant forfeited his expectation of privacy in his home when he voluntarily opened his door for a delivery woman).

As alleged by Denton, the facts show that he never left his home nor exposed himself to public view. Therefore, since there was no consent or exigency justifying Rievley's entrance into his home, Denton's arrest violated *Payton*. Although Denton both avers that he opened the front door thinking his wife was knocking and notes that "he saw lights approaching his front door and thus opened his door to investigate" (Dist. Ct. Doc. No. 21 p. 1), he has presented evidence that he was ready for bed at the time Rievley arrived at his home and intended to avoid exposing himself to the public. Denton's opening of his front door for someone he thought to be his wife is consistent with an intention to avoid exposing himself to the outside since, unlike the delivery woman in *Gori*, a wife is an insider rather than an outsider. Denton therefore has shown an attempt to maintain a privacy interest in his home. Further, Denton stated in his affidavit: "***I was standing 3 feet inside my home*** and never crossed the threshold stepping onto the porch at any time." (Dist. Ct. Doc. No. 36 ¶ 12 (emphasis in original)).

### b.

"When analyzing whether a constitutional right was clearly established at the time of the events in question we 'must look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits.'" *Merriweather*, 569 F.3d at 315 (quoting *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994)). The important

question is whether Rievley had notice of the unlawfulness of his actions. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). *Payton* and *Atwater*, taken together, clearly establish that warrantless in-home arrests for misdemeanor offenses absent consent or exigency violate the Fourth Amendment. 445 U.S. 573; 532 U.S. 318. These two Supreme Court cases were decided well before Denton's arrest.

Rievley, however, argues that since Denton has offered no proof that any of the other officers on the scene at the time of Denton's arrest disagreed with Rievley's actions, he did not violate a clearly established constitutional right of which a reasonable person would have known. But such a requirement, unsupported by case law, does not make sense: the number of people engaged in an activity does not dictate the activity's reasonableness nor the actors' awareness of the legality of their activity.

Rievley next argues that the "contours" of the *Payton* right are not clearly established since case law in this Circuit does not address the impact of domestic violence on exigent circumstances. Exigency exists in a limited set of circumstances: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Thacker v. Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (citing *United States v. Johnson*, 22 F.3d 674, 680 (6th Cir. 1994)). Here, the facts do not support the existence of any of the situations giving rise to exigency, so any argument concerning exigency's scope is irrelevant. *See, e.g.*, *Cummings*, 418 F.3d at 686 n.4 ("Because qualified immunity must be asserted by the defendant official, it was incumbent upon Defendants to raise a plausible legal basis for the asserted legality of their seizure of [Plaintiff's] home and person.").

*c.*

Finally, Rievley argues that he is entitled to qualified immunity because he was following a Tennessee statute denoting a preference for arrest in cases where there is probable cause of domestic abuse. Tenn. Code Ann. § 36-3-619. Other Circuits have held that while reliance on a statute is a factor to consider in determining whether or not an officer's actions were objectively reasonable, "[r]eliance on a statute does not make an official's conduct *per se* reasonable." *MIMICS, Inc. v. Angel Fire*, 394 F.3d 836, 846 (10th Cir. 2005) (citing *Roska v. Peterson*, 328 F.3d 1230, 1252, 1253 (10th Cir. 2003)). *But cf. Lederman v. United States*, 291 F.3d 36, 47 (D.C. Cir. 2002) ("'The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.'" (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979))).

The Tenth Circuit has held that "[d]etermining whether reliance on a statute makes an official's conduct objectively reasonable, despite violating the plaintiff's clearly established rights, depends on '(1) the degree of specificity with which the statute authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded that the statute was constitutional.'" *MIMICS*, 394 F.3d at 846 (quoting *Roska*, 328 F.3d at 1253 (footnotes omitted)); *cf. Merriweather*, 569 F.3d at 317 ("[P]olicies that are themselves constitutional can be unconstitutional if improperly applied.")

Here, the relevant statute states:

> If a law enforcement officer has probable cause to believe that a person has committed a crime involving domestic abuse, whether the crime is a misdemeanor or felony, or was committed within or without the presence of the officer, the preferred response of the officer is arrest.

Tenn. Code Ann. § 36-3-619(a) (WEST 2009).

Even if compliance with a state statute generally renders an officer's conduct more reasonable, this particular statute lacks specificity and is not necessarily applicable to the case at hand. First, the statute does not require arrest in situations involving domestic violence; it has merely been interpreted to *permit* warrantless arrests in such situations. *See, e.g.*, W. Mark Ward, Tn. Criminal Trial Practice § 2:15 (2008-2009) ("[T]he requirement that a misdemeanor be committed in the presence of an officer in order to arrest without a warrant has been eliminated in domestic abuse cases."); Tenn. Op. Att'y Gen. No. 00-048 (March 16, 2000) ("[A]n officer also has authority to obtain an arrest warrant for that individual, if he so chooses, and upon a finding that 'there is probable cause to believe that the offense was committed and that the defendant committed it.'") (citing Tenn. R. Crim. P. 4; Tenn. Code Ann. § 40-6-205). Second, the statute does not specifically address warrantless in-home arrests; it is silent on whether its preference for arrest applies inside a home when an officer lacks consent or exigent circumstances.

We, therefore, do not think an interpretation of Tenn. Code Ann. § 36-3-619 to permit warrantless in-home arrests is objectively reasonable in light of long-standing Supreme Court precedent holding that such arrests violate the Fourth Amendment. *See Payton*, 445 U.S. at 576; *MIMICS*, 394 F.3d at 847 ("To the extent [defendant] is interpreting the Village ordinance and New

- 11 -

Mexico statutes to permit nonconsensual warrantless entries at any time and under any circumstances, his understanding is not objectively reasonable. It has long been the rule that such warrantless nonconsensual entries into commercial property not open to the public violate the Fourth Amendment.") (citation omitted).

### C. Claim for warrantless entry to arrest Dustin Denton

The parties dispute whether Denton "maintains a claim for an unlawful entry and search . . . of his home." This appears to be a dispute regarding whether Denton included a valid claim in his complaint for an unlawful search of his home. Since Denton's complaint satisfied the requirements of Federal Rule of Civil Procedure 8—it included statements regarding the district court's jurisdiction, his entitlement to relief, and a demand for such relief— his claim was valid. *See* Fed. R. Civ. P. 8.

### III. CONCLUSION

For the foregoing reasons, we **DENY** Denton's motion to dismiss for lack of jurisdiction, **AFFIRM** the denial of Rievley's motion for summary judgment regarding qualified immunity, and **AFFIRM** the district court's decision that Denton maintains a claim for the unlawful entry and search of his home.