SHEPHERD, Circuit Judge,
concurring in part and dissenting in part.
I concur with the majority’s conclusion that Coates was not a prevailing party entitled to attorney’s fees under 42 U.S.C. § 1988. I part ways with the majority, however, over its decision to grant qualified immunity to Glandon.
I am deeply concerned about the Fourth Amendment violation at issue in this case. Respect for the sanctity of the home “has been embedded in our traditions since the *478 origins of the Republic.” Payton v. New York, 445 U.S. 573, 601, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Supreme Court is crystal clear that without a warrant, an officer cannot enter a home absent exigent circumstances. Steagald v. United States, 451 U.S. 204, 211-12, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). Because Glandon did not have a warrant and there were no exigent circumstances, Glandon could only enter the home with Coates’s voluntary consent, Georgia v. Randolph, 547 U.S. 103, 109, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), and he remained in the home subject to her approval, United States v. McMullin, 576 F.3d 810, 815 (8th Cir.2009). Although a report of child abuse is a serious allegation, by the time Glandon was asked to leave the home, Glandon knew there was no immediate danger to the children. Accordingly, Glandon violated Coates’s Fourth Amendment rights when he did not leave her home at her request.
A finding of a Fourth Amendment violation does not end the analysis, and I agree with the majority that the crux of the qualified immunity question is whether a reasonable officer would have understood that remaining in Coates’s home without her permission violated clearly established Fourth Amendment law. But I disagree with the majority’s conclusion that despite the longstanding Fourth Amendment prohibition, Glandon acted reasonably because of the obligations imposed on officers under the Missouri statute at issue. Because I believe the Missouri statute did not make Glandon’s actions objectively reasonable, I respectfully dissent.
The qualified immunity inquiry turns on the “objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.” Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotations omitted). “[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional.” Roska, 328 F.3d at 1252 (quoting Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir.1994)). Police officers are entitled to rely on the assumption that the legislature considered the views of legal counsel and concluded that the statute is constitutional. Id. at 1252 n. 29 (quoting Grossman, 33 F.3d at 1209). The existence of an authorizing statute, however, does not make an officer’s actions per se reasonable. Denton v. Rievley, 353 Fed.Appx. 1, 6 (6th Cir.2009); Roska, 328 F.3d at 1252; Grossman, 33 F.3d at 1209-10.
Whether a statute makes an officer’s actions reasonable depends in part on “the degree of specificity with which the statute authorized the conduct in question.” Roska, 328 F.3d at 1253. For example, in Denton, the Sixth Circuit found that a state statute indicating a preference for arrest where there is probable cause of domestic abuse was insufficiently specific to make the officer’s arrest of a person inside his home without a warrant objectively reasonable. 353 Fed.Appx. at 6-7. Because the state statute did not require warrantless arrests and was silent as to whether the preference for arrest applied to warrantless, in-home arrests, the Sixth Circuit concluded that the statute did not make the officer’s actions reasonable in light of longstanding Supreme Court precedent holding that such actions violate the Fourth Amendment. Id. at 7. Accordingly, before concluding that the Missouri statute at issue made Glandon’s actions reasonable, I think the majority should have considered the statute’s specificity.
Because the Missouri statute imposes only a general obligation on officers, Gian *479 don’s compliance with the statute did not make his actions reasonable. The relevant Missouri statute, section 2010.145.4 of the Missouri Revised Statutes, states that “[t]he appropriate law enforcement agency shall ... assist the [Children’s] division in the investigation.” The statute does not, however, define or specify the form of assistance required. Thus, although the statute obligated Glandon to offer some type of help, it did not specifically require him to accompany social services workers in their investigations, let alone require him to accompany them into private homes or remain with them in private homes even after homeowners withdraw their consent. See Denton, 353 Fed.Appx. at 7. Here, because remaining in Coates’s home without her consent violated well-established Fourth Amendment law and nothing in Missouri statute obligated Glandon to stay, Glandon’s actions were not objectively reasonable.
The majority cites Kloch in support of its opposite conclusion. In Kloch, we hinted at a per se rule of reasonableness when we broadly stated that officers’ actions are objectively reasonable when they act “in good faith while performing discretionary duties that they are obliged to undertake.” 545 F.3d at 609. However, because legal reasonableness ultimately depends on the legal landscape taken as a whole, Wilson, 526 U.S. at 614, 119 S.Ct. 1692, Kloch must stand for the limited proposition that when a state statute specifically requires officers to take certain actions, the officer’s compliance with the statute will generally resolve the question of reasonableness. Accordingly, Kloch is not dispositive here because the Missouri statute did not specifically require Glandon to remain with the social services worker.
The majority finds Kloch applicable because it treats the Missouri statute as obligating Glandon to accompany social services workers into private homes. The majority describes the clearly established question as whether the Fourth Amendment was violated “when the officer was accompanying a social services worker investigating a complaint of child neglect as required by state statute ” (emphasis added). If the Missouri statute had in fact required Glandon to “accompany” the social services worker, I would most likely agree that it made Glandon’s actions reasonable. Because the statute imposed only a general obligation to assist, however, I conclude that despite the Missouri statute, a reasonable officer would have known that remaining in Coates’s home violated clearly established Fourth Amendment law.
I respectfully dissent from the majority’s decision to grant qualified immunity to Glandon.