OPINION OF THE COURT
FUENTES, Circuit Judge.
Aundrey Green claims that four New Jersey state troopers used excessive force after they arrested him for driving under the influence of alcohol and providing them with a false name. In ruling on defendants’ motion for summary judgment, the District Court denied the troopers’ claim that they were entitled to qualified immunity. This appeal followed, and we will affirm for the following reasons.
I.
The parties dispute many of the relevant facts in this case. Because we are reviewing a summary judgment ruling, we must view the facts in the light most favorable to Green, the party who opposed summary judgment. See Scott v. Harris, — U.S. —, 127 S.Ct. 1769, 1774-75, 167 L.Ed.2d 686 (2007); Couden v. Duffy, 446 F.3d 483, 489 n. 1 (3d Cir.2006).[1]
Late at night, on April 22, 2002, Green was driving home with his girlfriend Alice McCoy and her two children when he was pulled over for speeding by New Jersey state troopers Robert Parry and Frederick Fife. Green did not have a driver’s license or any other identification, and provided a false name to the officers. Later tests revealed that his blood alcohol level was over the legal limit and that he had marijuana in his system.
After asking Green to get of out of the car, the troopers continued speaking to him and asking questions. Meanwhile, troopers Salvatore Giuliano and Craig Brown arrived in a separate car. Eventually, Parry placed Green under arrest, handcuffed him, and searched him. Parry then walked Green to his patrol car and placed him in the back seat. When Parry entered the front of the car, Green began to complain that he had to use a bathroom immediately. Parry told him that he would have to wait until they got to the police station, and Green, growing increasingly agitated, continued to implore Parry to allow him to urinate. Green then began to curse and yell at Parry when he noticed that the other troopers had asked his girlfriend to step out the car he had been driving.
At some point, Green was able bring his handcuffs in front of his body. Green told Parry that he was going to urinate in the car and unzipped his pants, and Parry then heard a banging sound on the plastic divider between the back and front seats.[2] Parry immediately walked around the car and opened the rear door. Without first asking Green to exit the vehicle, Parry, according to Green, violently grabbed his *160 neck and throat, choking him.[3] While struggling to pull Green out, Parry commanded him to get out of the car, but Green refused.
Soon after, Fife came over and twice sprayed Green with either mace or pepper spray, which made it difficult for him to see or speak. Parry, Fife, and another trooper repeatedly commanded Green to exit the vehicle and tried to pull him out. Green resisted by wedging his feet under the front seat and pushing himself away from the officers towards a partition that divided the back seat. As the struggle ensued, both Parry and Fife punched and kicked Green several times. Green has stated that he was punched in the face— suffering a swollen eye and a “busted” nose and mouth—and kicked in the ribs as well as other parts of his body. Green has also asserted that Fife twice hit him in the head with a flashlight, causing him to bleed from resulting lacerations.[4]
Eventually, the officers were able to extract Green from the car. They threw him to the ground, and, according to Green, kneed him in the back, and kicked him in the ribs and buttocks.[5] The troopers then called for an ambulance, which took Green to the hospital where he was treated for two lacerations on his head (requiring three stitches) and an abrasion on his leg. Although Green has maintained in this litigation that he never hit any of the officers, he pleaded guilty to aggravated assault in state court and admitted that he kicked or struck two of the officers.
Under a number of theories, Green sued the New Jersey State Police, the four troopers involved in the incident, and John N. Schusler, a state trooper who conducted an internal investigation that did not result in any discipline. The defendants moved for summary judgment, which the District Court granted with the exception of Green’s Fourth Amendment claim that the four troopers used excessive force. The District Court held that a “reasonable jury could find that the officers’ actions were objectively unreasonable under the circumstances” and that “[t]he constitutional rights in question were clearly established.” App. 18-19.
II.
When a defendant claiming qualified immunity files an interlocutory appeal, the Supreme Court has held we do not have jurisdiction to review “a district court’s summary judgment order insofar as that order determines whether or not the pretrial record sets forth a ‘genuine’ issue of fact for trial.” Johnson v. Jones, 515 U.S. 304, 319-20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). We do have jurisdiction, however, “to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right.” Ziccardi v. City of Philadelphia, 288 F.3d 57, 61 (3d Cir.2002); see also Rivas v. City of Passaic, 365 F.3d 181 (3d Cir.2004). Therefore, we will review the troopers’ appeal to the extent it raises the latter question.
III.
When examining whether officers are entitled to qualified immunity, “the first *161 inquiry must be whether a constitutional right would have been violated on the facts alleged.” Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). “If, and only if, the court finds a violation of a constitutional right, ‘the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.’” Scott, 127 S.Ct. at 1774, 127 S.Ct. 1769 (quoting Saucier, 533 U.S. at 201, 121 S.Ct. 2151). We consider these two questions in turn.
A.
The Supreme Court has stated that the “use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151. We must evaluate the reasonableness of “a particular use of force ... from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,” while recognizing “that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary.” Graham v. Connor, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Supreme Court has stated that courts should consider “the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Id. at 396, 109 S.Ct. 1865. We have also provided other relevant factors, such as “the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.” Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997).
We agree with the District Court that, viewing the facts in the light most favorable to Green, a reasonable jury could conclude that the troopers’ use of force was excessive under the circumstances. We do not mean to suggest that the troopers in fact acted unreasonably or that police officers are not permitted to use force when attempting to extract an arrestee from a police vehicle when that arrestee has refused to exit. Indeed, were we to accept the troopers’ version of events in this case, we would likely agree with them that no constitutional violation occurred.
Green, however, has alleged three key facts that, if believed, could lead a reasonable jury to conclude that the officers used excessive force. First, Green has stated that Parry violently grabbed his throat before asking him to exit the vehicle. Second, Green has claimed that Fife twice hit him on the head with a flashlight, causing lacerations that required stitches. Finally, Green has maintained that after he was pulled from the car, he was thrown to the ground, kneed, and kicked several times. These allegations, none of which are either established or definitively refuted by the videotapes, present issues of material fact that must be resolved by a jury.
Applying the Graham and Sharrar factors, we believe these actions, if proven, would constitute excessive force. Green was arrested for a nonviolent offense and was unarmed. Although Green was agitated and had brought his handcuffs forward, an action certainly justifying a physical response from the police, it would not have been reasonable for Parry to violently grab his neck without first using lesser force. Similarly, although the officers were justified in using force to extract *162 Green once he refused to exit,[6] it would not have been reasonable for Fife to strike him on the head twice with a flashlight.[7] Finally, if he was restrained on the ground after being pulled from the car, it would not have been reasonable for the officers to continue kicking him.[8]
B.
Having determined that a reasonable jury could find a constitutional violation based on the alleged facts, we next consider whether Green’s rights in this specific context were “clearly established.” To conclude that a right is “clearly established,” “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Thus, “[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151. Officers who make reasonable mistakes as to what the law requires are entitled to qualified immunity, which “operates ... to protect officers from the sometimes hazy border between excessive force and acceptable forcé.” Id. at 206, 121 S.Ct. 2151 (internal quotation marks omitted).
In the context of excessive force claims, we have relied on the factors set forth in Graham and Sharrar in evaluating whether an officer made a reasonable mistake. See Estate of Smith v. Marasco, 430 F.3d 140, 149-150 (3d Cir.2005); Couden v. Duffy, 446 F.3d 483, 497 (3d Cir.2006). We *163 have stated that these factors “are well-recognized,” Couden, 446 F.3d at 497, and that when an officer applies them in “an unreasonable manner, he is not entitled to qualified immunity.” Estate of Smith, 430 F.3d at 150.
We agree with the Attorney General that there is no “case law holding that police officers cannot use force against a subject in an attempt to subdue him or remove him from a vehicle in which he has wedged himself.” Appellant’s Br. at 33. We believe, however, that a reasonable officer would know, based on the Graham and Sharrar factors, that it would be excessive to grab and choke an arrestee’s throat, especially before using lesser force; to hit him on the head twice with a flashlight; and to kick him when he is already restrained and on the ground. Fife, to his credit, even acknowledged that striking Green on the head with a flashlight would have been “inappropriate,” and would have constituted excessive force, App. 118-19; he explained, in fact, that such an action could constitute “deadly force.” Supp. App. 30.[9] Because it would be unreasonable for officers to believe these actions would not constitute excessive force, we hold that Green’s rights were “clearly established.”
IY.
We reiterate that we must accept Green’s allegations, to the extent they do not conflict with the videotapes, as true. Of course, the ultimate truthfulness of his allegations is for a jury to determine. For the reasons stated above, we will affirm.

. In the record, we have the benefit of two videotapes which capture many of the events at issue in this litigation. We have relied on the videotapes, where possible, to state the facts of this case. See Scott, 127 S.Ct. at 1776 (“The Court of Appeals ... should have viewed the facts in the light depicted by the videotape.”). Unlike in Scott, however, the videotape evidence is inconclusive on several of the key disputed facts.

. Parry has stated that when he heard the banging sound, he looked back and saw that one of Green’s hands was no longer in the handcuffs. App. 56-57. According to Parry, he was able to re-secure the handcuffs within a few seconds of first trying to pull Green out of the vehicle. App. 72-73. Green, by contrast, has claimed that neither of his hands were released from the handcuffs at any point after his arrest. App. 166.

. Fife has stated that he used the flashlight to strike Green on his wrists in an effort to dislodge his grip in the car. App. 123. The videotapes do not provide a clear enough picture to determine where Green was struck.

. On the second videotape, one can see Green pulled from the vehicle, but he and the officers then immediately move offscreen.

. Parry has disputed this account, claiming instead that he grabbed Green's arm or outer clothing. App. 58-59. Unfortunately, the videotapes are not conclusive on this factual issue.

. In his analysis, our dissenting colleague asks how we would remove Green from the vehicle. We have stated, however, that the officers were justified in using force; indeed, if the officers’ account of events is true, they were able to pull Green out the car without resorting to the alleged actions that we conclude would have been unreasonable.

. Fife has stated that because he did not know how thoroughly Parry had previously searched Green, he believed that Green might have been trying to reach for a weapon in his pants. App. 90. We believe this fear was reasonable, but even Fife, as noted below, has admitted that striking Green on the head with the flashlight would have been excessive. The Attorney General has not cited to any evidence or testimony in the record suggesting that Parry or the other troopers also believed Green might be reaching for a weapon.

. The Attorney General argues that by pleading guilty to aggravated assault, Green has implicitly acknowledged that the officers did not use excessive force. As a result, according to the Attorney General, Green’s claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The District Court did not address this argument because it was not raised below. In briefing before the District Court, the Attorney General discussed Green’s assault plea to refute his malicious prosecution claim, but did not mention it when challenging his excessive force assertions. In fact, the Attorney General even specifically stated in its reply papers that it was not arguing that Green’s guilty plea precluded his excessive force claim. As we have noted before, ”[i]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument.” Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir.1991).
In any event, it is doubtful that Green’s excessive force claim would be barred by Heck. See Nelson v. Jashurek, 109 F.3d 142, 146 (3d Cir.1997) (noting in an excessive force case that although it would "be difficult for [the plaintiff] to establish liability ..., we do not see why a judgment in his favor would throw the validity of his conviction [for resisting arrest] into doubt”); Dyerv. Lee, 488 F.3d 876 (11th Cir.2007) (rejecting the argument that Heck bars an excessive force claim under facts similar to those in this case). We agree with Green that his admission that during the struggle he came "in contact either by striking or kicking two of the officers,” App. 288, would not, as a matter of logic, necessarily conflict with a finding of excessive force.

. In Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), the Supreme Court noted that the factors set out in Graham are “cast at a high level of generality,” but that in "an obvious case, these standards can 'clearly establish' the answer, even without a body of relevant case law.” Subsequent to Brosseau, we have continued to apply the Graham and Sharrar factors to evaluate whether rights are clearly established. See, e.g., Estate of Smith, 430 F.3d at 151-53. We agree with the dissent that the exact level of force officers may use in extracting an arrestee from a car is not clearly established. We believe, however, that it would have been “obvious” to the troopers that Graham and Sharrar prohibit the three alleged actions we have highlighted. Indeed, at no point have defendants even argued that the officers could have believed such actions were acceptable or reasonable.