NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0150n.06

No. 10-5546

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 07, 2012**

LEONARD GREEN, Clerk

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
| HAROLD MATHENEY,                         | ) | ON APPEAL FROM THE UNITED    |
|                                          | ) | STATES DISTRICT COURT FOR THE |
| Plaintiff-Appellant,                     | ) | MIDDLE DISTRICT OF TENNESSEE |
|                                          | ) |                              |
| V.                                       | ) |                              |
|                                          | ) |                              |
| CITY OF COOKEVILLE, TENNESSEE, et al.,   | ) | OPINION                      |
|                                          | ) |                              |
| Defendants-Appellees.                    | ) |                              |
|                                          | ) |                              |

Before: BOGGS and SILER, Circuit Judges; and VAN TATENHOVE, District
Judge.[*]

**VAN TATENHOVE**, District Judge. Plaintiff-Appellant Harold Matheney pled guilty in state court to resisting and evading arrest. He then filed a 42 U.S.C. § 1983 claim for excessive force against the City of Cookeville and against the officers who arrested him. The district court granted summary judgment in favor of the defendants, finding that Matheney's claim was barred by the doctrine set forth in *Heck v. Humphrey,* 512 U.S. 477 (1994). On appeal, Matheney argues that the Sixth Circuit should "revisit" its prior holdings under *Heck*. Appellees believe the district court was correct to dismiss the claim but also argue they are entitled to qualified immunity – an issue raised

_____

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

before the district court but not reached by it. For the reasons set forth below, we agree that the claim is barred by *Heck* and will affirm the grant of summary judgment on that basis.

**I.**

On the night of July 17, 2007, officers from the Cookeville Police Department responded to a call reporting suspicious activity by occupants of a pickup truck located in a Cookeville trailer park. Harold Matheney, who was driving the truck, would not stop for the police officers but instead drove the truck out of the trailer park and on to a nearby street. Officer Chase Mathis began pursuing Matheney, and this pursuit led to a seven mile car chase in which Matheney ignored all stop signs and traffic control devices. The car chase ended when Matheney made a "controlled crash stop" at a junkyard where he had previously lived. After bringing the truck to a stop, he ran into the junkyard and hid behind an old truck.

Still in pursuit of Matheney, Mathis arrived at the junkyard, and according to his deposition testimony, gave a verbal warning for Matheney to surrender or be apprehended by a police dog. Upon command, the police dog, Melo, ran into the junkyard to locate Matheney and apprehended him by biting his leg. Officers Anthony Reep and Josh Ward arrived on the scene soon after to assist Mathis. They claim Matheney fought with Melo by grabbing him "by the ears and by the neck, twisting his neck." According to the Appellees, Matheney continued to fight with the officers after Melo released him by flailing around, moving his arms, pulling away from the officers' grasp, reaching under his body, and reaching to a stack of garbage. Officer Ward testified that he was afraid Matheney was trying to reach for a weapon. Ward used his knee to strike Matheney's side in an effort to bring his arms under control. After that did not work, Officer Reep deployed a taser. Reep testified that even after deploying the taser, Matheney "continued to fight."

-2-

Matheney tells a different version of the events. He claims he did not hear Mathis give a warning and thus, did not know that Melo was going to be released. He also maintains that he did not fight the dog, that he complied with the officers' commands, and that Melo was still biting him when Reep deployed the taser. A local resident, Terry Barbour, allegedly witnessed some of the altercation. In his affidavit, Barbour states that one officer was sitting on Matheney's chest, one was holding his feet, and the dog was biting Matheney's leg. He further states that Matheney's arms were at his side and that he was not fighting the police.

Eventually the officers were able to handcuff Matheney and walk him to the patrol car. According to an audio recording of the events, after the shouting and commotion ends, an officer tells Matheney to "walk right." Matheney argues that the officers should have asked him if he was able to walk instead of ordering him to walk, but aside from that argument, he does not allege any police misconduct after he was handcuffed. The entire event, from the time Matheney brought his car to the junkyard until the police told Matheney to walk to the patrol car, lasted less than three minutes. Based on these events, Matheney pled guilty in state court to resisting arrest, reckless endangerment, violation of Tennessee's implied consent statute, and felony evading arrest.

Matheney filed a complaint in federal court against the city of Cookeville, Robert Terry (the police chief of the Cookeville Police Department), and against the officers involved in the incident. He alleges a violation of 42 U.S.C. § 1983 and claims use of excessive force. Matheney claims that as a result of the incident, he was treated for a one inch deep cut on his left leg and for lacerations on the top of his head. He claims to have suffered physical damage and emotional distress and to have incurred "medical, hospital, and legal expenses." The district court granted summary judgment to the Appellees, holding that the suit was barred by *Heck*. Matheney now appeals that ruling.

**II.**

**A.**

This court reviews legal conclusions *de novo*. Because a grant of summary judgment is made as a matter of law, the district court's order granting summary judgment is reviewed *de novo*. *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir. 2007) (citing Fed. R. Civ. P. 56(c)). In considering a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Id.* at 402-03 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *See id*. at 586-87 (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). Stated alternatively, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

**B.**

The Supreme Court held in *Heck v. Humphrey,* 512 U.S. 477 (1994), that a plaintiff cannot recover in a § 1983 suit when the basis for the claim necessarily implies the invalidity of a previous

state criminal conviction. A § 1983 claim implies the invalidity of a previous state conviction if judgment in favor of the plaintiff would negate one of the elements of the crime of which the plaintiff was found guilty. The Supreme Court gave the following example in *Heck*:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, the § 1983 action will not lie.

*Id*. at 487 n.6. If the § 1983 action would challenge the validity of a state court criminal conviction, the action is barred unless the state court conviction has been overturned or expunged. *Id*. at 486-87.

The example in *Heck* does not apply to this case because Matheney pled guilty to resisting arrest under Tennessee Code § 39-16-602, and the lawfulness of the arrest is not an element of this crime. This Circuit has, however, recognized another situation in which a conviction of resisting arrest will bar a § 1983 suit for excessive force.

> There are two circumstances, however, in which an excessive-force claim might conflict with a conviction. The first is when the criminal provision makes the lack of excessive force an element of the crime. *The second is when excessive force is an affirmative defense to the crime . . . .* In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction.

*Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citations omitted) (emphasis added). "[U]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." *Roberts v. Anderson*, 213 F. App'x 420, 427 (6th Cir. 2007) (referring to Tenn. Code. Ann. § 39-16-602) (citations omitted).

For *Heck* to bar a § 1983 claim, success on the claim must *necessarily* imply the invalidity of the conviction. Thus, both the § 1983 claim and the conviction must arise out of the same events. *See Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005). Conversely, an excessive force claim is not barred when the alleged use of force occurred *after* the suspect was handcuffed and brought under control. *See Coble v. City of White House*, 2009 WL 2850764, at *8-9 (M.D. Tenn. Aug. 29, 2009), rev'd on other grounds, 634 F.3d 865 (6th Cir. 2011). In such a case, the force would not be "inextricably intertwined" with the suspect's resistance to arrest.

Matheney did not make any real effort to argue excessive force after arrest to the district court, and the court specifically stated that it found no evidence *or allegation* in the record that the officers used improper force on Matheney after he was handcuffed. On appeal, Matheney does make one vague reference alleging a use of excessive force after he was handcuffed. He claims that: "The Defendant police officers continued to torture Harold Matheney, whose leg was now severely injured, after his arrest. At time stamp 22:18:30, one of them stated, 'you're going to walk right, or we will drag you.'" [Appellant Brief ("Br.") at 36.] He does not, however, make any attempt to develop or otherwise explain how this constitutes excessive force and does not cite any legal authority for the proposition. Thus, the argument is waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 (1st Cir. 1995)). Even if not waived, the argument would fail on the merits. Matheney does not allege that the dog bite, knee strikes, or taser deployment occurred after he was handcuffed. Thus, even viewing the facts in the light most

favorable to Matheney, the force used by the officers and the force he used in resisting arrest are inextricably intertwined.

Matheney seems to acknowledge that the law in the Sixth Circuit is not in his favor, but he asks this Circuit to "revisit rulings of *Heck v. Humphrey*" and in support cites mainly cases from other circuits. [Appellant Br. at 23.] Of course, the cases he cites from other circuits, to the extent they are contrary to the law in this circuit, have no precedential value. It appears, however, that many of the cases Matheney cites can be distinguished factually from the facts of this case. In *Smith v. City of Hemet*, 394 F.3d 689, 698-99 (9th Cir. 2005), the court allowed the § 1983 action to proceed because it could not determine whether the police used the alleged excessive force while Smith was resisting arrest or "subsequent to the conduct on which his conviction was based." *Id*.; *see also Green v. New Jersey State Police*, 246 F. App'x 158 (3rd Cir. 2007) (where the claimant alleged excessive force was used against him after he was arrested); *Dyer v. Lee*, 488 F.3d 876, 882-84 (11th Cir. 2007) (where the suspect kicked an officer while being placed under arrest, but the officers allegedly used excessive force after the suspect had been handcuffed and placed in the patrol car).

Matheney does cite one case from this Circuit, *Karttunen v. Clark*, 369 F. App'x 705 (6th Cir. 2010). In *Karttunen,* we held that *Heck* did not bar the defendant from pursuing his § 1983 claim for excessive force even though he had been convicted of resisting arrest. The decision turned on Michigan law. In Michigan, unlike in Tennessee, excessive force is not a defense to resisting arrest. *Id*. at 708. Therefore, *Karttunen* is not controlling in this case.

Next, Matheney argues that his conviction should not bar the § 1983 claim because the indictment only mentions resistance against Officer Mathis, who is named as "the arresting officer"

and does not specifically mention the dog or Officers Ward and Reep. [Appellant Br. at 29.] This argument is also unavailing because the record indicates that Matheney pled guilty to resisting arrest by all of the officers involved. Mathis's affidavit of complaint, which was attached to the arrest warrant, states: "After the dog was taken away the defendant continued to resist the *officers*[,] struggling and refusing to obey *their* commands. Because of the resistance[,] *officers* were forced to deploy a taser to subdue the defendant and finally get him handcuffed and into custody." [Appellee Br. (Mathis, Reep, and Ward) at 23.] At the plea hearing, the attorney for the government described the resisting arrest charge as "resisting physical restraint from the *officers*." [*Id*. at 24.] The resisting arrest charge arose out of one continuous struggle with all of the officers working together as a team. Thus, our analysis is not affected by the wording of the indictment. *See Cummings*, 418 F.3d at 680, 682-83 (where the defendant pled no contest to assaulting only Officer Vaughn during an arrest, the court found that the plea barred the excessive force claim against Officer Vaughn, the city, and another officer).

Finally, Matheney argues that *Heck* should not bar his claim because he did not understand the charge of resisting arrest when he pled guilty. Specifically, he argues that he thought he was pleading guilty to running from the police. This argument is not persuasive. First, Matheney was separately charged with and pled guilty to evading arrest. The separate charge of resisting arrest was for "using force against a law enforcement officer," and Matheney signed a plea form stating that he understood the nature of the charges and had discussed them with his attorney. Second, both the government and the court explained the separate charges to Matheney during his plea hearing. The court defined evading arrest as "knowingly evading or fleeing from a person you knew to be an officer who was attempting to make an arrest" and resisting arrest as "with force, knowingly resisting

a person you knew to be a law enforcement officer who is attempting to make an arrest." Matheney even described resisting arrest in his own words during his deposition as "trying to struggle or fight back."

Even if Matheney made a plausible argument that he did not understand the charge, the fact remains that his guilty plea has not been overturned or challenged in any way. The Supreme Court made it clear in *Heck* that to recover damages for alleged excessive force that would render a conviction invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Matheney has done none of these things. He cannot now be allowed to succeed in a civil action in which he alleges he did not fight with the K-9 or the police and instead complied with all of their commands. This flies in the face of the *Heck* doctrine, which was created to prevent just these types of collateral attacks. Thus, we affirm the district court's grant of summary judgment in favor of the Appellees.

After holding that the claims were barred by the *Heck* doctrine, the district court was correct to dismiss the complaint. The Supreme Court explained, "[T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, *the complaint must be dismissed* unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 502 U.S. at 487 (emphasis added). Because the claims have been dismissed, there is no reason to reach the issue of qualified immunity.

**III.**

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the Defendants-Appellees.