NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0011n.06

**Case No. 15-5566**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 08, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JEREMY PARVIN, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DAVID CAMPBELL, *et al.*, | ) | TENNESSEE |
| | ) | |
|     Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE, CLAY, and GILMAN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Jeremy Parvin appeals an adverse summary judgment on his 42 U.S.C. § 1983 excessive force claim against Defendant David Campbell, a police officer employed by the City of Chattanooga, Tennessee. The district court granted summary judgment for Campbell on qualified immunity grounds. We **AFFIRM** the district court's judgment, but we do so on different grounds. We hold that Parvin's claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on that claim would necessarily call into question Parvin's state criminal conviction which arose from the same underlying facts. There is therefore no reason to reach the issue of qualified immunity.

## I.

## BACKGROUND

### *Factual Background*

The undisputed facts are as follows. Campbell is a police officer employed by the City of Chattanooga, a position he has held for four years. On June 13, 2012, just after midnight, Campbell was dispatched to 901 Clear View Lane in Chattanooga for a domestic dispute involving Parvin. Campbell was wearing his police uniform and driving a police-marked vehicle. When he arrived at the residence, Campbell parked his patrol car, walked up to the door, and rang the doorbell. The parties dispute what happened next.

### A. Parvin's Testimony

According to Parvin, he opened the door for Campbell while his wife, Jackie Newman, stood behind him. Parvin then told Campbell that Newman was the initial aggressor and advised him to speak with her. Parvin was bleeding and had marks on his body, whereas Newman displayed no signs of physical harm.

Campbell asked Parvin to step outside, but he refused. Parvin was not intoxicated, nor was he noisy or abusive. Campbell then entered Parvin's residence and instructed him to turn around to be handcuffed. Then, "in a split second [Campbell placed Parvin] in some type of police move/hold and just violently slammed [him] onto [his] stone floor." (R. 17-7, Parvin Deposition, PageID# 127.) Parvin, who weighs one hundred pounds less than Campbell, felt severe pain from the effects of what happened. At some point during the takedown, Campbell sprayed oleoresin capsicum ("pepper spray") in Parvin's face. Parvin was then placed in handcuffs and put into the rear seat of the patrol vehicle that had brought Campbell to the scene.

Parvin testified that this entire exchange between him and Campbell lasted no more than ten or fifteen seconds. Parvin also testified that he never resisted arrest or attempted to get away, nor did he even know that he was being arrested by Campbell.

## B. Campbell's and Newman's Testimony

Campbell and Newman tell a different version of the events. When Campbell arrived at the residence, he was met at the door by Newman, who was hysterical. Newman told Campbell that Parvin was intoxicated and had attacked her. According to Newman, she "ran up the steps, flung open the door, and told the police that [her] husband was trying to kill [her] son" and asked for Campbell's help. (R. 17-8, Jackie Newman Deposition, PageID# 137.) Campbell observed redness on Newman's upper chest, neck, forearms, and upper arms.

Newman gave Campbell permission to enter the residence to investigate the reported domestic dispute. When Campbell walked into the residence, Parvin came around a corner and told Newman she needed to leave. Campbell observed that Parvin was shirtless and that his body had scratches. Campbell also observed that Parvin was intoxicated in that he emitted an odor of intoxicants. At some point, another officer arrived on the scene.

Campbell wanted to separate Parvin and Newman to try to determine who the primary aggressor was. Campbell asked Parvin to step out onto the front porch so that he could "keep watch" of Parvin and Newman while they were separated. (R. 17-5, David Campbell Affidavit, PageID# 101.) In particular, Campbell was concerned that either Parvin or Newman would go out of sight and retrieve a weapon. And for his own safety, Campbell wanted Parvin "out of his environment." (*Id.* at 102.) Campbell asked Parvin to step outside of the residence "a number of times," but Parvin refused. (*Id.*) Campbell told Parvin that he would be detained until Campbell could make a determination as to who the primary aggressor was. Parvin still refused to come

outside. Campbell stepped towards Parvin and instructed him to put his hands behind his back, but Parvin resisted.

Campbell then reached for Parvin's wrist, but Parvin "pulled back and balled up his fist as if he intended to strike [Campbell]." (R. 17-5 at 102.) In response, Campbell grabbed Parvin's other hand and managed to take Parvin to the floor using a "straight arm bar takedown procedure." (*Id.*) Once on the ground, Parvin continued to resist by putting his arms underneath himself and resisting being handcuffed. According to Newman, Parvin "continued to fight … continued to cuss, spit, and resist [arrest] until [an officer] had to mace him." (R. 17-8 at 138.) Campbell stated that after he sprayed Parvin with pepper spray, Parvin stopped resisting. Campbell was then able to handcuff Parvin and place him under arrest.

## C. The Charged Offense

Parvin was indicted for two counts of domestic assault and one count of resisting arrest. The two assault counts were dismissed by the State before trial. On May 5, 2014, a bench trial was held before the Honorable Rebecca J. Stern of the Criminal Court for Hamilton County, Tennessee on one count of resisting arrest under Tennessee Code § 39-16-602. Following the trial, the court found Parvin guilty of resisting arrest and sentenced him to six months of imprisonment, suspended to unsupervised probation. Parvin appealed his conviction to the Court of Criminal Appeals of Tennessee, which affirmed the conviction. *State v. Parvin*, 2015 WL 2128585 (Tenn. Crim. App. May 6, 2015), *cert. denied* (Tenn. Aug. 13, 2015).

### *Procedural Background*

On June 9, 2013, Parvin filed a complaint against Campbell, the City of Chattanooga, and John Doe 1, asserting claims for violations of his right to be free from excessive force and false

4

arrest pursuant to § 1983 and the Fourth Amendment. Approximately nine months later, Parvin voluntarily dismissed the City of Chattanooga from this action.

Campbell filed a motion for summary judgment based on qualified immunity. In his response, Parvin acknowledged that the false arrest claim against Campbell, as well as the claims against John Doe 1, should be dismissed. On May 6, 2015, the district court entered its order granting Campbell's motion for summary judgment and dismissed Parvin's claim on qualified immunity grounds. Parvin now appeals that ruling.

## II.

## DISCUSSION

### Standard of Review

We review a district court's grant of summary judgment on the basis of qualified immunity *de novo*. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). Summary judgment is appropriate where no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In ruling on a motion for summary judgment, we must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). We cannot weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material, factual dispute. *Id.* at 324. A mere scintilla of

evidence is not enough. *Liberty Lobby*, 477 U.S. at 252. Our role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Id.* at 248-49.

**Analysis**

It is well settled under *Heck* that when an individual like Parvin brings a § 1983 claim against the arresting officer, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. If so, the claim is barred unless he proves that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*

In order to determine whether *Heck* precludes Parvin's § 1983 claim that Campbell used excessive force, we must first determine whether a judgment in Parvin's favor on this claim would necessarily imply the invalidity of his conviction for resisting arrest under Tennessee Code § 39-16-602. We conclude that it would.

We have recognized two circumstances under which an excessive force claim might conflict with a conviction. "The first is when the criminal provision makes the lack of excessive force an element of the crime." *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 486 n.6). "The second is when excessive force is an affirmative defense to the crime . . ." *Id*. (citing *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005), for the proposition that "an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense."). *See also Gottage v. Rood*, 533 F. App'x 546, 550 (6th

Cir. 2013). In each of these circumstances, the § 1983 suit would "seek[ ] a determination of a fact that, if true, would have precluded the conviction." *Schreiber*, 596 F.3d at 334.

As to the first basis for applying *Heck*—i.e., where a plaintiff asserts a claim that contradicts an element of the underlying criminal offense—the Supreme Court gave the following example:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest . . . . He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, . . . the § 1983 action will not lie.

*Heck*, 512 U.S. at 487 n.6. But this example does not apply in our circumstances because Parvin was found guilty of resisting arrest under Tennessee Code § 39-16-602, which does not have, as an element, that the arrest be lawful.

We turn then to the second basis for applying *Heck*—i.e., where the plaintiff's claim could have been asserted in criminal court as an affirmative defense. "[U]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest; thus, a guilty plea and resultant conviction of such a charge necessarily includes a finding that the officer did not use excessive force." *Roberts v. Anderson*, 213 F. App'x 420, 427 (6th Cir. 2007) (referring to Tennessee Code § 39-16-602) (citations omitted).

As we have previously found that an officer's excessive use of force is a defense to a charge of resisting arrest under Tennessee law, Parvin's resisting arrest conviction barred his excessive force claim because he did not raise excessive force as a defense. Parvin's excessive force claim challenges his underlying conviction and is, therefore, barred under *Heck*.

But the analysis does not end here. For *Heck* to bar a § 1983 claim, success on the claim must necessarily imply the invalidity of the conviction. Accordingly, both the § 1983 claim and the conviction must arise out of the same events. *See Cummings*, 418 F.3d at 682-83 (finding that the "struggle between [the plaintiff] and the officers gave rise to both [the plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined.") On the other hand, an excessive force claim is not barred when the alleged use of force occurred after the suspect was handcuffed and brought under control. *See Coble v. City of White House*, 2009 WL 2850764, at *8-9 (M.D. Tenn. Aug. 29, 2009), *rev'd on other grounds*, 634 F.3d 865 (6th Cir. 2011). In such a case, the force would not be "inextricably intertwined" with the suspect's resistance to arrest.

This case falls much closer in that spectrum to the *Cummings* situation. Parvin made no effort to argue excessive force *after* arrest to the district court, nor does he do so on appeal. Both Parvin's and Campbell's versions of facts describe Parvin being handcuffed after he was pepper-sprayed. Parvin specifically argues that Campbell used excessive force before he was handcuffed. Therefore, under our prior holdings, Parvin's excessive force claim arises out of the same conduct that led to his conviction.

Moreover, Parvin's claim is not that Campbell used excessive force after Parvin stopped resisting or to stop his resistance. Rather, his claim is based solely on his assertions that he did not resist arrest, did nothing wrong, and was attacked by Campbell for no reason. Thus, Parvin's suit "squarely challenges the factual determination that underlies his conviction for resisting an officer" and, if he prevails, "he will have established that his criminal conviction lacks any basis." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 324-25 (5th Cir. 2004). This is exactly the type of claim that is barred by *Heck*.

8

The fact remains that Parvin's conviction has not been overturned or challenged through habeas. The Court of Criminal Appeals of Tennessee affirmed Parvin's conviction and the Tennessee Supreme Court denied certiorari. The United States Supreme Court made it clear in *Heck* that to recover damages for alleged excessive force that would render a conviction invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Parvin has done none of these things. He cannot now be allowed to succeed in a civil action in which he alleges that he did not fight with Campbell and instead complied with all of his commands. This would fly in the face of the *Heck* doctrine, which was created to prevent just these types of challenges. For this reason, Campbell is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's grant of summary judgment in favor of Defendant David Campbell.